1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

          Plaintiff,

        v.

BRUCE ALLEN HUMMEL,

          Defendant.

Case No.  MJ07-5124

DETENTION ORDER

     THIS COURT conducted a detention hearing on June 27, 2007 pursuant to 18 U.S.C. §3142.  The United States of America was represented by David Jennings.  The defendant was present and represented by his attorney, Miriam Schwartz.  Also present was Juliet Miller, U.S. Pretrial Services Officer.

     The defendant was arrested on or about June 20, 2007 pursuant to a warrant based on an indictment out of the District of Alaska charging the defendant with twelve counts of wire fraud in violation of 18 U.S.C. §1343.  The defendant made his initial appearance before the undersigned on June 20, 2007.  A detention hearing was scheduled for June 25th and then continued, upon the parties' consent, to June 27, 2007.  The Rule 5 Hearing was also continued to June 27, 2007.

     The United States filed a Motion for Detention based on risk of flight and safety of any other person and the community.

     This Court finds that no condition or combination of conditions which defendant can meet will reasonably assure the appearance of the defendant as required and safety of any other person and the

Detention Order
Page - 1

1  community.  This finding is based on (1) the nature and circumstances of the offense charged; (2) the
2  weight of the evidence against the person; (3) the history and characteristics of the person including those
3  set forth in 18 U.S.C. §3142(g)(3)(A)(B); and  (4) the nature and seriousness of the danger release would
4  impose to any person or the community.

5  The parties proceeded at the hearing with telephonic testimony from Michael Mozelewski, a
6  Detective with the Bellingham Police Department, along with four exhibits.  In addition to the four
7  exhibits, the court considered the following written documents:  First Supplemental Pretrial Services
8  Report as well as attached Pretrial Services report.

## FINDINGS

10  The defendant is charged in an Indictment with twelve counts of wire fraud, all counts of which are
11  related to the defendant's deceptive acts which resulted in his receiving Alice Hummel's disability benefits
12  from November 1990 through February 2004 when he knew that Alice Hummel was deceased.  The
13  Indictment alleges a loss to the State of Alaska of approximately $276,314.08.

14  The maximum penalty for the charge is 20 years confinement, a $250,000 fine, or both, three years
15  supervised release and a $100 special assessment.  The government calculates a guidelines sentence of four
16  years in prison.

17  The government alleges a strong evidentiary case against the defendant based on statements he has
18  made to investigating authorities as well as his admissions contained in Exhibit 1, a letter written by the
19  Defendant and addressed to Officer Gitt of the Bellingham Police Department.

20  With regard to the history and characteristics of the defendant, the court notes that the defendant
21  advised the Pre-trial Services Report writer that he has resided at the same address in Westport,
22  Washington for the past three years.  He lives in a trailer located on a friend's property.  That friend,
23  however, confirmed that the defendant had only lived there about a year.  Mr. Hummel was born in
24  Washington and has also resided in Alaska, Montana and Idaho.  He is presently unemployed and has been
25  retired for about six years.  His monthly income is presently limited to $250 in retirement and $303 in
26  Social Security.

27  The defendant has no prior criminal history, including no history of arrests.  He is, however, a
28  suspect in an open homicide case involving his wife Alice Hummel.  On May 10, 2004 he was first

questioned by Detective Mozelewski and Detective Gitt, both of the Bellingham Police Department, and Special Agent Bray of the Federal Bureau of Investigation, about the disappearance of his wife. During that interview he told the officers that he last saw his wife in October 1990 when he took her to the airport in Seattle. He further stated that he had telephone conversations with her with the last one occurring in January 1991. According to Detective Mozelewski, Mr. Hummel admitted that he continued to collect his wife's disability payments. He also maintained his position that his wife left the family and he did not know where she was. He further denied having played any part in her disappearance.

A search warrant was executed on Mr. Hummel's home in Billings, Montana on that same date, May 10, 2004. The officers returned to the home the next day to ask Mr. Hummel more questions but he was gone, leaving behind his personal belongings. His then wife Sharon said she did not know where her husband was going. Exhibit 3 is a summary of an interview of Sharon Hummel by an FBI Agent. She advised the agent that the defendant told her, on July 30, 2004, that he had disappeared because he thought he was going to be arrested and he was afraid to go to jail. She again spoke with the defendant on August 9, 2004 at which time he told her that he was continuing to live in a camper around Billings and that he changes his location daily.

The defendant was next contacted by the three same officers in a campground in St. Mary's, Idaho. By this time, they had received the letter, which is Exhibit 1. The letter was provided by Sharon Hummel and was also mailed to Detective Gitt. The undersigned can see how the letter only served to cast more suspicion on Mr. Hummel as being a person who was involved his wife's disappearance. It is also clear to the court that Mr. Hummel knew he was a suspect when the officers first questioned him in Billings, Montana.

As a result of this second contact with Mr. Hummel in Idaho, the defendant agreed to accompany the officers back to Bellingham and voluntarily submit to a polygraph examination. When they arrived in Bellingham, the defendant requested to take the polygraph the following day and the officers agreed to that request. Mr. Hummel did not appear for the examination the next day and in fact disappeared again.

The testimony of Detective Wozelewski, along with the exhibits, raises grave and serious concerns and doubts about the likelihood of the defendant appearing, as directed, in Alaska. When he knew he was a suspect in his wife's disappearance he took great steps to appear to cooperate with the investigation

authorities but at the first opportunity, he disappeared, not once but twice. He is now under an Indictment and the court has no basis to believe that he would appear in court when he now knows criminal charges have in fact been filed against him.

## CONCLUSIONS

For purposes of this detention hearing, the court finds believes there is little likelihood the defendant would appear in court as directed. This court finds that the government has met his burden by a preponderance of the evidence and concludes that no condition or combination of conditions will reasonably assure the appearance of the person as required.

## ORDER OF DETENTION

The defendant shall be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

Inasmuch as this Order of Detention supplements the Order of Transfer signed by the undersigned following the detention hearing, the US Marshal is directed to transport the defendant as promptly as possible to the District of Alaska..

DATED this 28th day of June, 2007.

/s/ Karen L. Strombom
Karen L. Strombom
U.S. Magistrate Judge